UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JASON DUHE                                        CIVIL ACTION

VERSUS                                            NO. 20-1651

JAMES M. LEBLANC, SECRETARY OF                    SECTION "I" (2)
LOUISIANA DEPARTMENT OF SAFETY &
CORRECTIONS, ET AL.

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]   For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

## I.   FACTUAL BACKGROUND

Petitioner Jason Duhe is a convicted inmate incarcerated in the Plaquemine Parish Detention Center in Davant, Louisiana.[2]   ECF No. 1, ¶ III, at 2.   On April 4, 2011, Duhe and three co-defendants (Deanna L. Wetzler, Sky Lee Hatcher, and Jimmie Lee Catchings, Jr.) were

---

[1]  A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.   *Id*. § 2254(e)(2)(B).

[2]  The prison building is located in Davant, Louisiana while the mailing address for inmates is a post office box in Pointe-a-la-hache, Louisiana.   https://www.ppso.net/corrections.

charged by bill of information in St. Tammany Parish with one count of creation or operation of a

clandestine methamphetamine laboratory.[3]   Duhe pled not guilty to the charge that same day.[4]

The Louisiana First Circuit Court of Appeal summarized the facts established at trial as

follows:

> On January 26, 2011, Detective Christopher Comeaux and his partner, Detective Julie Boynton, both with the St. Tammany Parish Sheriff[']s Office, were patrolling the Wal-Mart Supercenter on Natchez Drive in Slidell.   Detective Comeaux, who was accepted at trial as an expert in the manufacture and distribution of methamphetamine, testified that he spent a lot of his time at this particular Wal-Mart because it had a pharmacy that sold pseudoephedrine, the main ingredient used to make methamphetamine.   Pseudoephedrine is the main ingredient in Sudafed and other cold and allergy medicines.   Also, Wal-Mart carried a large number of the other ingredients used to make methamphetamine, such as Coleman fuel, coffee filters, salt, Drano, lye, lithium batteries, and instant cold packs, which are used to obtain ammonia nitrate or sulfate.   Detective Comeaux explained that he patrolled this Wal-Mart because of numerous complaints about people buying ingredients to make methamphetamine.   According to the detective, pharmacies at different stores (*e.g*., Walgreens and Wal-Mart) became integrated through the "NPLEx system" so that authorities could track a person's pseudoephedrine purchases from different stores.   According to Detective Comeaux, this pharmacy-hopping to buy pseudoephedrine became known in the law enforcement community as "smurfing."   People, therefore, who sought to buy pseudoephedrine for purposes of making methamphetamine, and were aware of the NPLEx system, began to go together to the same pharmacy and spread out to buy pseudoephedrine at different times.   Detective Comeaux referred to this practice as a bit more intricate form of "smurfing."
>
> On this particular day (January 26) when Detective Comeaux was walking past the pharmacy in Wal-Mart at about 4:30 p.m., he observed a man, later identified as Jimmy Catchings, buy a box of cold and allergy medicine. Pseudoephedrine can be purchased only from behind the pharmacy counter.   Since Catchings's medicine had come from behind the counter, Detective Comeaux suspected it was pseudoephedrine.   The detective also observed that another man, later identified as the defendant, was in the same pharmacy line as Catchings, but two or three people behind Catchings.   The detective did not see what the defendant bought, or if he bought anything, because he continued to move throughout Wal-Mart looking for suspicious activity (*i.e*., in the sporting goods section where Coleman fuel is sold and the electronics section, where lithium

---

[3]  State Record (hereinafter "St. R.") Vol. 3 of 8, at 624, Bill of Information, 4/4/11.
[4]  *Id*. at 602, Min. Entry, 4/4/11.

batteries are sold).    Finding no one in these sections, the detectives left Wal-Mart.
Detective Comeaux observed the defendant get into a vehicle, a silver four-door
sedan, which was occupied by Catchings.    They were both in the back seat.
Detective Comeaux suspected that because Catchings and the defendant were in the
same line, and Catchings had probably purchased Sudafed, they were probably
"smurfing" pseudoephedrine.

        Detective Comeaux moved his vehicle to a different location for a better
view of the sedan.    As they watched the vehicle, a female, later identified as
Deanne Wetzler, got out of the front passenger seat and went into Wal-Mart.
Detective Comeaux then observed a man, later identified as Sky Hatcher, walking
in the parking lot away from Wal-Mart.    Hatcher approached the sedan, scanned
the parking lot, then got into the vehicle.    Detective Comeaux saw Hatcher talking
to Catchings and the defendant.    Then Hatcher and the defendant, according to
Detective Comeaux, engaged in a hand-to-hand transaction.    The detective saw
one man hand what he believed to be money to the other, but he did not know what
was being exchanged in return.    Based on what he believed to be drug activity,
Detective Comeaux pulled alongside the sedan, made contact with Hatcher and
began questioning him.    At this time, Wetzler was leaving Wal-Mart and walking
back toward the sedan. She was carrying a Wal-Mart bag.    The detectives took her
bag, opened it, and saw that she had purchased Sudafed.    The detectives then got
the defendant and Catchings out of the vehicle, patted them down, and handcuffed
the defendant.    Detective Comeaux searched the vehicle and found a Wal-Mart
bag, which had been tied in a knot, with forty Sudafed tablets in it and two empty
Sudafed boxes with empty blister packs.    The detective also found a $5 bill on the
floorboard by the driver's seat.    He found nothing else in the car that is used to
make methamphetamine.    Detective Comeaux **Mirandized** the defendant, then
asked him what he was doing.    The defendant said that he had purchased Sudafed
for his sinuses.    Upon further discussion, the defendant told the detective that
Catchings had asked him to travel from Bogalusa to Slidell to purchase Sudafed.
Detective Comeaux then arrested everyone for the creation or operation of a
clandestine lab by purchasing pseudoephedrine with the intent that it be
manufactured into an illicit drug.

        Deanne Wetzler testified at trial that she had met the defendant the night
before the day (January 26) they drove to Slidell and bought Sudafed.    Wetzler
lived in a Budget Inn Motel in Bogalusa, and the defendant lived in a motel room
next to her.    Prior to driving to Slidell, Wetzler and her boyfriend, Sky Hatcher,
had talked to Catchings about driving to Wal-Mart in Slidell to buy Sudafed.    The
plan was that everyone would buy a box of Sudafed and give it to Catchings.
Catchings then planned to sell the Sudafed tablets.    According to Wetzler,
Catchings was going to pay her $10 for buying the Sudafed, and pay Hatcher a bit
more for his purchase of Sudafed.    Wetzler testified that by the time all four of
them were in the car to drive to Slidell, it was understood by all that they were
going to Wal-Mart to buy Sudafed. Wetzler did not know what the defendant
planned to do with his box of Sudafed.    After Wetzler was arrested, she gave a

written statement to the police, which provided, "I, Deanne Wetzler, bought a box of Sudafed in exchange for 10$ [sic].  I recieve [sic] a monthly check and needed the money."

The defendant testified at trial that he asked Hatcher if he could get a ride to Slidell to get medicine for his sinuses.   Before they left for Slidell, his intent was to get sinus medicine, and he did not know what the others intended to do.  The defendant testified that he knew nothing about the deal that Catchings had with Hatcher.   According to the defendant, after he purchased his Sudafed, he went back to the car, put his Sudafed on the seat and began drinking a beer.   Catchings began popping the Sudafed tablets out of the blisters from the box of Sudafed that he (Catchings) had purchased.   At some point, Catchings began doing the same to the defendant's box of Sudafed, but the defendant was unaware of this.   When the defendant finally noticed that Catchings had his box of Sudafed, the detectives had arrived and detained them.   The defendant further testified that the $5 bill Detective Comeaux had found was his.   The defendant stated that he was loaning Hatcher the $5 for a cold drink and pack of cigarettes.   The defendant had prior convictions for possession with intent to distribute marijuana, simple possession of marijuana, attempted possession of a firearm by a convicted felon, vandalism (when he was in high school), contributing to the delinquency of a juvenile, and simple battery.[5]

Co-defendants Wetzler, Catchings, and Hatcher, eventually pled guilty to the charge.[6] Duhe went to trial before a jury on August 16, 2011.[7]   The jury found him guilty as charged.[8]   On August 18, 2011, the state trial court denied Duhe's motions for new trial and post-verdict judgment of acquittal.[9]   That day, Duhe also pled not guilty to the State's multiple offender bill charging him as a third felony offender.[10]

---

[5]  *State v. Duhe*, No. 2012-KA-0172, 2012 WL 5462757, at *1-3 (La. App. 1st Cir. Nov. 8, 2012); St. R. Vol. 2 of 8, at 248, 249-53, 1st Cir. Opinion, 2012-KA-0172, 11/8/12.

[6]  St. R. Vol. 2 of 8, at 459-68, Tr. of Wetzler's Plea, 5/25/11; *id.* at 437-51, Tr. of Catchings' Plea, 5/17/11; *id.* at 352-75, Tr. of Hatcher's Plea, 2/14/12.

[7]  St. R. Vol. 3 of 8, at 608-14, Trial Mins., 8/16/11; *id.* at 684-839, Trial Tr., 8/16/11; St. R. Vol. 4 of 8, at 840-1011, Trial Tr., 8/16/11.

[8]  St. R. Vol. 3 of 8, at 650, Jury Verdict Form, 8/16/11.

[9]  *Id.* at 652, Motion for New Trial, 8/18/11; *id.*, Trial Court Order, 8/18/11; *id.* at 653, Motion for Post-Verdict Judgment of Acquittal, 8/18/11; *id.* at 654, Trial Court Order, 8/18/11.

[10]  *Id.* at 655, Multiple Bill, 8/18/11; *id.* at 615, Min. Entry, 8/18/11; *id.* at 656, Answer & Motion to Quash, 8/18/11; St. R. Vol. 4 of 8, at 1012-18, Hearing on Multiple Bill Tr., 8/18/11 (misdated 8/16/11).

On October 28, 2011, the state trial court proceeded to hear evidence on the multiple bill, during which a discrepancy in the case numbers was discovered.   Due to the error, the State filed an amended multiple bill and the court proceeded to arraign Duhe on that amended multiple bill.[11] At a November 17, 2011, revocation hearing, the state trial court adjudicated Duhe to be a third felony offender and sentenced him to serve 16 years in prison without benefit of parole, probation, or suspension of sentence.[12]   The court denied Duhe's motions to reconsider and correct the sentence.[13]

On direct appeal to the Louisiana First Circuit, Duhe's appointed counsel argued that the state trial court erred when it denied the motion to suppress the physical evidence seized after an illegal search.[14]   On November 8, 2012, the Louisiana First Circuit reversed the state trial court's denial of the motion to suppress, finding the officers did not have probable cause to arrest Duhe, which tainted the search and seizure.[15]   The appellate court reversed Duhe's conviction and sentence, remanding the matter to the trial court.

However, on August 30, 2013, the Louisiana Supreme Court granted the State's writ application seeking review of the Louisiana First Circuit's ruling.[16]   In its reasoned opinion issued on December 10, 2013, the supreme court reversed the appellate court decision and found no error

---

[11] St. R. Vol. 3 of 8, at 661, Multiple Bill, 10/28/11; *id*. at 618-19, Multiple Bill Hearing Mins., 10/28/11; *id.* at 669, Answer & Motion to Quash, 11/3/11; St. R. Vol. 4 of 8, at 1020-50, Multiple Bill Hearing Tr., 10/28/11; *id* at 1043-50.

[12] St. R. Vol. 3 of 8, at 620-22, Multiple Bill Hearing Mins., 11/17/11; *id*. at 682-83, Reasons for Judgment, 1/9/12; St. R. Vol. 4 of 8, at 1052-80, Multiple Bill Hearing Tr., 11/17/11.

[13] St. R. Vol. 3 of 8, at 672, Trial Court Order, 11/17/11; *id*., Motion to Reconsider Sentence, 11/17/11; *id*. at 679, Trial Court Order, 12/19/11; *id*., Motion to Correct Illegal Sentence, 12/12/11; St. R. Vol. 4 of 8, at 1078-79, Multiple Bill Hearing Tr., 11/17/11.

[14] St. R. Vol. 2 of 8, at 268, Appeal Brief, 12-KA-0172, 2/23/12.

[15] *Duhe*, 2012 WL 5462757, at *1; St. R. Vol. 2 of 8, at 248, 1st Cir. Opinion, 2012-KA-0172, 11/8/12.

[16] *State v. Duhe*, 120 So. 3d 251 (La. 8/30/13); St. R. Vol. 2 of 8, at 344, La. Sup. Ct. Order, 2012-K-2677, 8/30/13.

in the trial court's denial of the motion to suppress.[17]   The supreme court reinstated Duhe's conviction and sentence.[18]

Duhe did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days of the Louisiana Supreme Court decision.   Thus, his conviction and sentence became final on March 10, 2014.[19]

While the state's writ application was pending, on November 29, 2013, Duhe filed a request for subpoenas in the state trial court, arguing that a hearing was needed to determine his entitlement to release based on the Louisiana First Circuit's 2012 order vacating his conviction.[20]   The state trial court denied the motion on December 9, 2013, because the matter was, at that time, pending before the Louisiana Supreme Court.[21]   The state trial court granted Duhe until January 4, 2014, to seek review of that ruling, which he did not do.[22]

Instead, on February 19, 2014, approximately two months *after* the Louisiana Supreme Court issued its December 10, 2013, decision reversing the appellate court's decision, Duhe filed a pleading with the state trial court entitled "Writ of Habeas Corpus."   In this filing, Duhe requested that he be released based on the Louisiana First Circuit's 2012 decision vacating his conviction.[23]   The state trial court denied the motion on February 25, 2014, explaining that the

---

[17] *State v. Duhe*, 130 So. 3d 880 (La. 12/10/13); St. R. Vol. 2 of 8, at 298-309, La. Sup. Ct. Order, 2012-K-2677, 12/10/13.
[18] *Id*.
[19] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); Sᴜᴘ. Cᴛ. R. 13(1).
[20] St. R. Vol. 2 of 8, at 311, Motion for Subpoenas, 12/6/13 (dated 11/29/13).
[21] *Id*. at 319, Trial Court Order, 12/9/13.
[22] *Id*. at 297, Trial Court Order, 12/26/13; *id*. at 296, Notice of Intent, 12/23/13 (dated 12/17/23).   Contrary to the State's suggestion (*see* ECF No. 17, at 7 & n.4), the record reflects that the state trial court granted leave through January (not June) 9, 2014.   St. R. Vol 2 of 8, at 297, Trial Court Order, 12/26/13.
[23] *Id*. at 233, Writ of Habeas Corpus, 2/24/14 (dated 2/19/14).

Louisiana Supreme Court had reversed the First Circuit decision and reinstated the conviction and sentence.[24]   A few months later, Duhe filed a writ application, which the Louisiana First Circuit summarily denied on September 23, 2014.[25]   The Louisiana Supreme Court also denied Duhe's writ application, without stated reasons, on October 2, 2015.[26]

On May 8, 2015, while those matters were pending, Duhe, through counsel, filed an application for post-conviction relief in the state trial court in which he asserted two claims:

(1)     The state trial court erred when it failed to suppress evidence taken from a bag held by co-defendant Wetzler and the Walmart bag found inside the car occupied by Duhe and others; and

(2)     Trial and appellate counsel were ineffective for failing to frame the legal issue within the context of substantial jurisprudence prohibiting searches of containers associated with lawful detainees when there is no probable cause to believe contraband is found inside.[27]

After receiving the State's opposition memorandum, the state trial court denied the application on August 28, 2015.[28]   The court held the first claim was barred from review by LA. CODE CRIM. PROC. art 930.4 as repetitive of the claim heard on appeal.[29]   The court also held that Duhe failed to meet his burden of proof on the second claim.[30]   On November 5, 2015, the court denied Duhe's request for additional time to seek other post-conviction relief.[31]

---

[24] *Id*. at 234, Trial Court Order, 2/25/14.

[25] St. R. Vol. 6 of 8, at 1276-96, 1st Cir. Writ Application, 2014-KW-0989, 7/9/14 (dated 7/1/14).   *State v. Duhe*, No. 2014-KW-0989, 2014 WL 12570855, at *1 (La. App. 1st Cir. Sep. 23, 2014); St. R. Vol. 2 of 8, at 241, 1st Cir. Order, 2014-KW-0989, 9/23/14.

[26] *State ex rel. Duhe v. State*, 178 So. 3d 581 (La. 10/2/2015); St. R. Vol. 6 of 8, at 1241, La. Sup. Ct. Order, 2014-KH-2208, 10/2/15; *id*. at 1242, La. Sup. Ct. Writ Application, 14-KH-2208, 10/23/14 (dated 10/20/14).

[27] St. R. Vol. 1 of 8, at 197, Application for Post-Conviction Relief, 5/8/15.

[28] *Id*. at 171, Trial Court Order, 8/28/15; *id*. at 185, State's Answer, 7/16/15.

[29] *Id*. at 171, Trial Court Order, 8/28/15.

[30] *Id*.

[31] *Id*. at 160, Trial Court Order, 11/5/15; *id*., Motion for Extension, 11/2/15.

On December 11, 2015, the Louisiana First Circuit summarily denied Duhe's counsel-filed writ application.[32]   On March 14, 2016, the Louisiana Supreme Court declined to consider Duhe's *pro se* writ application, because it was not timely filed under LA. SUP. CT. R. X § 5.[33]   The Louisiana Supreme Court also denied the timely, counsel-filed writ application on October 17, 2016, holding that the first claim was barred as repetitive by LA. CODE CRIM. PROC. art 930.4(A), and the second claim lacked merit under *Strickland v. Washington*, 466 U.S. 668 (1984).[34]

More than one year later, on October 23, 2017, Duhe filed with the state trial court a "Petition for Writ of Certiorari" in which he alleged that the state trial court lacked subject matter jurisdiction to preside over his case, which he contends was based on an invalid or illegal arrest.[35] After the Louisiana First Circuit granted his writ to transfer the writ of habeas corpus to the state trial court, the state trial court denied Duhe's petition on June 8, 2018, construing it to be a prohibited, successive post-conviction application which was barred from review by LA. CODE

---

[32] St. R. Vol. 7 of 8, at 1299, 1st Cir. Order, 2015-KW-1599, 12/11/15; *id*. at 1300, 1st Cir. Writ Application, 2015-KW-1599, 10/15/15; *id*. at 1342, Supplement to Writ Application, 2015-KW-1599, 10/27/15.

[33] *State ex rel. Duhe v. State*, 186 So. 3d 651 (La. 3/14/2016); St. R. Vol. 7 of 8, at 1421, La. Sup. Ct. Order, 2016-KH-0261, 3/14/16; *id*. at 1423, La. Sup. Ct. Writ Application, 16-KH-261, 2/11/16 (dated 2/4/16). Rule X § 5 provides that a writ application must be filed within 30 days of the issuance of the appellate court's ruling.

[34] *State v. Duhe*, 202 So. 3d 475 (La. 10/17/2016); St. R. Vol. 7 of 8, at 1350, La. Sup. Ct. Order, 2016-KP-0057, 10/17/16; *id*. at 1353, La. Sup. Ct. Writ Application, 16-KP-57, 1/11/16.

[35] St. R. Vol. 1 of 8, at 124, Petition for Writ of Habeas Corpus, 12/7/17 (cover letter, *id*. at 123, dated 10/23/17).

CRIM. PROC. art. 930.4.[36]   On July 19, 2018, the court also denied Duhe's request for rehearing to which Duhe had attached a copy of his petition.[37]

On October 1, 2018, the Louisiana First Circuit summarily denied Duhe's writ application seeking review of the trial court's order.[38]   Duhe did not seek review of this ruling.

Seven months later, on January 3, 2019, Duhe filed another application for post-conviction relief asserting three grounds for relief:

(1)    the prosecutor failed to disclose taped testimony of two defendants Catchings and Hatcher and failed to disclose discussions of plea agreements and reduction or dismissal of charges against Catchings and Hatcher;

(2)    the state trial court erred by denying the motion for post-verdict judgment of acquittal based on the prosecutor's failure to prove all elements of the crime and to prove a causal connection between Duhe and the creation or operation of a methamphetamine laboratory; and

(3)    Defense counsel was incompetent at trial for failing to call Catchings and Hatcher as witnesses and failing to disclose conflicts of interest in the attorney/client relationship before and during trial.[39]

On April 2, 2019, the state trial court denied the application as successive, untimely, repetitive, and meritless.[40]   Duhe, through counsel, filed an application for supervisory writs,[41] which the

---

[36] St. R. Vol. 1 of 8, at 87, Reasons for Judgment, 6/8/18; *id*. at 129, Trial Court Order, 6/8/18; *see also*, *State v. Duhe*, No. 2018-KW-0264, 2018 WL 1831074, at *1 (La. App. 1st Cir. Apr. 16, 2018) (granting mandamus relief); St. R. Vol. 1 of 8, at 100, 1st Cir. Order, 2018-KW-0264, 4/16/18 (same); *id*. at 103, 1st Cir. Writ Application, 2018-KW-0264, 2/16/18.

[37] *Id*. at 75, Trial Court Order, 7/19/18; *id*. at 74, Motion for Rehearing, 7/11/18 (dated June 30, 2018); *id*. at 78, Petition for Writ of Habeas Corpus, 7/11/18.

[38] *State v. Duhe*, No. 2018-KW-0946, 2018 WL 4760144, at *1 (La. App. 1st Cir. Oct. 1, 2018); St. R. Vol. 8 of 8, at 1469, 1st Cir. Order, 2018-KW-0946, 10/1/18.   Prior to this, on August 7, 2018, the Louisiana First Circuit also denied Duhe's writ application because the state trial court had already ruled on his petition.   *State v. Duhe*, No. 2018-KW-0740, 2018 WL 3752120, at *1 (La. App. 1st Cir. Aug. 7, 2018); St. R. Vol. 8 of 8, at 1454, 1st Cir. Order, 2018-KW-0740, 8/7/18.

[39] St. R. Vol. 1 of 8, at 65, Application for Post-Conviction Relief, 1/11/19.

[40] *Id*. at 66, Trial Court Order, 4/2/19.

[41] St. R. Vol. 8 of 8, at 1485-89, Copy of 1st Cir. Writ Application, 2019-KW-0832, dated 6/14/19 (copy not file-stamped).

Louisiana First Circuit denied without stated reasons on August 19, 2019.[42]   Duhe did not seek state court review of this ruling.

On December 12, 2019, Duhe, through counsel, filed a motion for issuance of a writ of habeas corpus to be released pursuant to the Louisiana First Circuit's 2012 order vacating his conviction and sentence.[43]   On December 20, 2019, the State filed a motion seeking summary adjudication of Duhe's habeas corpus petition on the basis that the Louisiana Supreme Court's December 10, 2013, decision reversed the First Circuit's decision relied upon by Duhe.[44]   The state trial court denied Duhe's motion without stated reasons on December 30, 2019.[45]   Duhe did not seek review of this ruling.

## II.    FEDERAL HABEAS PETITION

On June 9, 2020, Duhe, through counsel, filed a petition for federal habeas corpus relief, which filing sets forth no specific claims or grounds for relief.[46]   In a supplemental petition filed July 13, 2020, Duhe asserts that the state trial court erred when it denied his motion to suppress evidence seized by police as there was no probable cause for his arrest or the search.[47]

The State filed a response in opposition to Duhe's petition asserting that the petition was not timely filed.[48]   In the alternative, the State argues that federal habeas relief is not available for

---

[42] *State v. Duhe*, No. 2019-KW-0832, 2019 WL 3891502, at *1 (La. App. 1st Cir. Aug. 19, 2019); St. R. Vol. 8 of 8, at 1484, 1st Cir. Order, 2019-KW-0832, 8/19/19.
[43] St. R. Vol. 1 of 8, at 35, Motion for Habeas Corpus, 12/12/19.
[44] *Id*. at 32, Motion for Summary Adjudication of Petition for Writ of Habeas Corpus, 12/20/19.
[45] *Id*. at 34, Trial Court Order, 12/30/19.
[46] ECF No. 1.
[47] ECF No. 4, at 5; *see also*, ECF No. 3 (this court's order for Duhe to file required form petition specifying his claims).
[48] ECF No. 17.

Duhe's Fourth Amendment claim under the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).[49]
Duhe did not file a reply to the State's opposition.

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-
132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28
U.S.C. § 2254.    The AEDPA went into effect on April 24, 1996,[50] and applies to habeas petitions
filed after that date.[51]    Duhe's petition was filed in this court by counsel on June 9, 2020.[52]

### A.    Preliminary Considerations

The two threshold questions in habeas review under the amended statute are (1) whether
the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state
court.    In other words, has the petitioner exhausted state court remedies and is the petitioner in
"procedural default" on a claim.[53]    The State concedes that Duhe has exhausted state court review
and no claim is in procedural default.[54]    The State, however, asserts that Duhe's federal habeas
petition was not timely filed because it was not filed within one year after finality of his
conviction.[55]

---

[49] *Id*.    In *Stone*, the Supreme Court held that federal habeas corpus relief may not be granted on the basis
that evidence obtained in an unlawful search or seizure was used at trial when the state courts have provided
the petitioner an opportunity fully and fairly litigate his Fourth Amendment claim.    *Stone*, 428 U.S. at 494.
[50] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital
habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the
moment they are signed into law.    *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).
[51] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).
[52] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus
petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.
*Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999).    However, a prisoner represented by counsel is not
entitled to application of the mailbox rule.    *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).
[53] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).
[54] ECF No. 17, at 15.
[55] ECF No. 17, at 11-14.

For the reasons that follow, the State's limitations defense is supported by the record. Duhe's petition was not timely filed under the AEDPA, and therefore, it should be dismissed with prejudice as time-barred.

**B.      AEDPA Statute of Limitations**

The AEDPA requires that a § 2254 petition must ordinarily be filed within one year of the date the conviction became final.[56]   Duhe's conviction was final on March 10, 2014, when the time for filing for a writ of certiorari in the United States Supreme Court expired after the December 10, 2013 decision by the Louisiana Supreme Court on his state court direct appeal. Applying § 2244 literally, Duhe had one year from finality of his conviction, or until March 10, 2015, to file his federal habeas corpus petition.   Duhe did not file his federal habeas corpus petition within this one-year period.   Accordingly, his petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the following two tolling doctrines recognized by applicable law.

**1.  Statutory Tolling**

The AEDPA provides for interruption of its one-year limitations period:   "The time during which a *properly filed application for State post-conviction or other collateral review* with respect

---

[56] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).   The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively

to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[57]    The Supreme Court has described this provision as a tolling statute.[58]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[59]    Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time period during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.    Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.[60]

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.[61]    The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state

---

applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[57] 28 U.S.C. § 2244(d)(2) (emphasis added).

[58] *Duncan*, 533 U.S. at 175-78.

[59] *Flanagan*, 154 F.3d at 199 n.1.

[60] *Flanagan*, 154 F.3d at 199 n.1; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (unpub.); *Gray v. Waters*, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

[61] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).

pleadings filed *pro se* by a prisoner.[62]   I have applied that rule where necessary to petitioner's state court pleadings delineated in the procedural history.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[63]   The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[64]   A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[65]

As calculated above, Duhe's conviction was final under federal law on March 10, 2014, which was 90 days after the Louisiana Supreme Court reinstated his conviction and sentence and no further direct appellate review was available.   At the time, however, Duhe had already begun his post-conviction and other collateral review efforts in the state courts.   As outlined previously, on November 29, 2013, he had filed his first request for release in the state trial court.[66]   Because of the arduous and overlapping procedural history, the State cedes the pendency of Duhe's pursuit of post-conviction and collateral review from that date (November 29, 2013) through denial of

---

[62] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).
[63] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")
[64] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").
[65] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).
[66] St. R. Vol. 2 of 8, at 311, Motion for Subpoenas, 12/6/13 (dated 11/29/13).

Duhe's subsequent Louisiana Supreme Court writ application on October 17, 2016.[67]   This court accepts the State's concession of that period of time and need not wrangle with the details or wisdom of same.   The record is clear that, after October 17, 2016, Duhe allowed more than one-year to pass before filing his federal habeas petition and during which one-year period he had *no* properly filed post-conviction or other collateral review pending in the state courts.

This Court will consider, as did the State, that the one-year AEDPA filing period was tolled from finality of his conviction on March 10, 2014, through October 17, 2016, when the Louisiana Supreme Court denied Duhe's 2016 counsel-filed writ application.   The AEDPA limitations period began to run on October 18, 2016, and continued without interruption for one-year until its expiration on October 18, 2017.   During that period, Duhe had no properly filed state post-conviction or other collateral review pending in any state court.

Although Duhe did file a motion for production of documents on October 24, 2016,[68] that pleading is not a post-conviction or other collateral review for tolling purposes.[69]   Duhe's next post-conviction pleading was the "Petition for Writ of Habeas Corpus" filed by him in the state trial court on October 23, 2017, which was five days *after* the AEDPA filing period expired.[70] Assuming this petition was a properly filed pleading, a pleading filed after expiration of the

---

[67] ECF No. 17, at 7, 8, 13.

[68] St. R. Vol. 1 of 8, at 123, Motion for Production of Documents, 10/27/16 (dated 10/24/16).

[69] *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (unpub.) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application, then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of unnecessary transcript does not warrant equitable tolling).

[70] St. R. Vol. 1 of 8, at 125, Petition for Writ of Certiorari, 12/7/17 (cover letter, *id*. at 123, dated 10/23/17).

AEDPA filing period does not provide a petitioner any tolling.[71]   Moreover, Duhe's federal petition was not filed by his counsel until June 9, 2020.   This was over two and one-half years (965 days) after the AEDPA one-year filing period expired on October 18, 2017, during which time there were ample additional periods during which Duhe had no properly filed proceeding pending.   Accordingly, Duhe's federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

### 2.   No Equitable Tolling Warranted

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.[72] Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[73]

Duhe has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case, and I can find none.   The record does not establish any other circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable

---

[71] *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (missing the AEDPA deadline by even one day renders a federal petition untimely)
[72] *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).
[73] *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

tolling in this case.[74]   Duhe, therefore, is not entitled to equitable tolling of the one-year AEDPA filing period.

Duhe has asserted no other excuse to avoid the expiration of the AEDPA limitations period.[75]   His federal petition filed June 9, 2020, was not timely filed and must be dismissed with prejudice for that reason.

---

[74] *See Holland v. Florida*, 560 U.S. 631, 651-54 (2010) (equitable tolling warranted where attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to response to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to inform petitioner that his state habeas petition had been denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling *not* justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did *not* justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).

[75] For example, Duhe has not urged his actual innocence or presented new, reliable evidence to meet the high burden set forth in *McQuiggin v. Perkins*, 569 U.S. 383 (2013) to forgive or restart the AEDPA statute of limitations.   He also has not sought relief from any state imposed procedural bar for the court to consider or apply the holding in *Martinez v. Ryan*, 566 U.S. 1 (2012).   *See Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (a *procedural bar* imposed by *state courts* "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'") (quoting *Martinez*, 566 U.S. at 13). Furthermore, the *Martinez* and *Trevino* decisions do *not* address or excuse the untimely filing of a federal habeas petition.   *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation).   *Martinez* and *Trevino* also are *not* new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA.   *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) ("the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).   Neither *Martinez* nor *Trevino* provide Duhe relief from his untimely federal filing.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Duhe's habeas corpus petition under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[76]

New Orleans, Louisiana, this ___23rd___ day of February, 2021.



DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[76] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).